## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

| | | |
|---|---|---|
| Demetrius Alexander Brown, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 4:19-cv-2790-TMC |
| v. | ) | |
| | ) | **ORDER** |
| | ) | |
| Anthony Dennis, Darryl Maghaney, | ) | |
| Capt. A. Lumpkin, Lt. Shirah, | ) | |
| Cpl. Marquez, and Ofc. Nathaniel, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Plaintiff Demetrius Alexander Brown, a state prisoner proceeding *pro se* and *in forma paurperis*, filed this action against Defendants pursuant to 42 U.S.C. § 1983. (ECF No. 9). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) (D.S.C.), this matter was referred to a magistrate judge for all pretrial proceedings. Before the court is the Report and Recommendation ("Report") of the magistrate judge recommending that the court deny Defendants' motion for summary judgment on Plaintiff's First Amendment claim against Defendants Anthony Dennis, Darryl Maghaney, Capt. A. Lumpkin, and Lt. Shirah based on the policy prohibiting religious headwear. (ECF No. 69 at 42). The magistrate judge, however, recommended the court grant the motion for summary judgment as to Plaintiff's First Amendment claims against Defendants Cpl. Marquez and Ofc.

Nathaniel. *Id*. With respect to all other claims asserted in the amended complaint, the magistrate judge recommends that the court grant Defendants' motion for summary judgment. *Id*. Plaintiff filed objections (ECF Nos. 71, 73), as did Defendants (ECF No. 74). The matter is now ripe for review.

## I. Facts and Procedural Background

Plaintiff alleges that Defendants violated his constitutional rights while he was a pretrial detainee at Sumter-Lee Regional Detention Center ("SLRDC"). (ECF No. 9 at 5). Plaintiff claims that on September 16, 2019, prison officials confiscated his religious headwear—a white kufi—pursuant to prison policy. (ECF Nos. 9 at 8; 64 at 1–2). According to Plaintiff, he had never been required to remove his kufi during previous stints at SLRDC or any other correctional facility in South Carolina. (ECF No. 9 at 8). When Plaintiff objected to the removal of his headwear, Defendant Lumpkin confirmed to the intake officer that Plaintiff was prohibited from wearing it at SLRDC and directed that it be stored with Plaintiff's personal effects. *Id*. Plaintiff filed a grievance regarding the confiscation of his kufi, and Defendant Shirah responded that policy prohibited inmates from wearing any religious clothing or medallions because such items "can cause a disruption in the pod where the inmate is housed or can make that inmate a target by other inmates." (ECF No. 60-4 at 3). When Plaintiff requested that he be permitted to view the written policy on religious headwear, Defendant Shirah explained that the "Staff does not provide

2

physical copies of our policies to inmates." *Id*. at 14. Similarly, Defendant Lumpkin, who oversaw several divisions at the SLRDC and regularly assisted in responding to inmate grievances, explained to a booking officer who helped process Plaintiff "that policy states inmates are prohibited from wearing any religious clothing or medallions as they can cause a disruption . . . , can be used to conceal contraband, can be stolen, or can make that inmate a target by other inmates." (ECF No. 60-5 at 2). Lumpkin also confirmed this policy to Shirah who responded to Plaintiff's grievance regarding the kufi. *Id*. at 3.

Plaintiff also complains that officials at SLRDC failed to provide him with a constitutionally sufficient diet. (ECF No. 9 at 9–10). According to the amended complaint, Plaintiff requested that SLRDC provide him with a "kosher religious diet" and Plaintiff acknowledges that this request was accommodated. *Id*. at 9. Plaintiff, however, states that he has received the "same exact breakfast and lunch . . . without any type of variety" every day of his incarceration at SLRDC. *Id*. at 10. SLRDC "is a pork-free facility in an effort to provide neutral menus which could accommodate the needs of various religious groups." (ECF No. 60-4 at 2). Nonetheless, a special kosher diet is offered for inmates who request it based on their religious mandates. *Id*. Kosher meals are pre-packaged and provided to the SLRDC by a food vendor that "has limitations on what they offer, [and] there are times where there is very little variety that can be provided without going to great expense." *Id*.

Lt. Shirah, who oversees food service, submitted an affidavit acknowledging that, even though efforts are made to provide variety, "[t]here is very little variety in the lunches that are provided by our food vendor to inmates with Kosher diets." *Id*. He points out, on the other hand, that even inmates with regular diets are offered very little lunchtime variety. *Id.* According to Lt. Shirah, all menus at SLRDC "are prepared in accordance with national dietary guidelines and . . . provide nutritionally adequate meals." *Id*.

Plaintiff filed a series of grievances complaining that the lack of variety in his specially requested kosher diet constituted cruel and unusual punishment and accusing facility officials of providing him less variety than other inmates based on religious discrimination. (ECF No. 60-4 at 8–11). Lt. Shirah responded that Plaintiff was being provided the kosher meals supplied to SLRDC by its food vendor and explained that meals were being alternated in an effort to give him variety. *Id*. at 8–9.

Finally, Plaintiff makes several allegations about the SLRDC's policies regarding religious services conducted at the facility. Plaintiff asserts that Christian worship services are permitted in the open pod area and that inmates who do not participate must cease all activities and return to their cubicles while the service proceeds. (ECF No. 9 at 10–11). Plaintiff claims that such services are loud enough that non-participating inmates can hear preaching from their cubicles. *Id*. at 11–12.

Plaintiff further alleges that inmates of the Islamic faith are required to pray in their cubicles while Christian inmates are permitted to pray in the open dayroom while participating in the services. *Id*. at 12.

Plaintiff filed a series of grievances raising issues related to SLRDC policy on religious group activities. (ECF No. 60-4 at 17–19). Specifically, Plaintiff complained that inmates who did not wish to participate in the service were nonetheless subjected to it because of the volume, and that Muslim inmates were required to abide by the policy forbidding group prayer in the dayroom while the rule was not enforced against Christian inmates. *Id*. at 17. In response to this grievance, Lt. Shirah explained that the only "group religion" activities permitted out in the pod are those led by an "outside volunteer" who has been pre-approved after a background check. *Id*. Lt. Shirah advised Plaintiff that "[i]f you would like [for] someone of Islamic faith to hold services have them fill out the proper paperwork at the facility and they will be looked at as everybody else." *Id*. In his amended complaint, Plaintiff acknowledged that he was afforded this opportunity—to apply to have an outside Islamic minister come in to lead services in the open pod—but indicated "no one of my faith belief wants to come due to the fact everyone else not participating would be forced to lock down . . . and they feel it's violating everyone else's rights." (ECF No. 9 at 12).   The policy on group religious practices, according to Lt. Shirah's affidavit, exists for "the safety and security of the pod" as

"there is only one officer in each pod" who "needs to be able to observe all inmates and volunteers, and keep inmates from becoming combative during a service." (ECF No. 60-4 at 4). With regard to the policy permitting group prayer out in the pod only during "organized religious services conducted by volunteers," Lt. Shirah noted that it applied "to all prayers" and "to all religions equally." *Id.* The policy is aimed at "prevent[ing] disruption on movement of inmates throughout the facility, and to reduce the opportunity for conflict between inmates on the basis of religious differences." *Id.* Defendant Major Maghaney, who was in charge of all administrative functions at SLRDC, reviewed the grievance responses related to Plaintiff's head covering and the religious services complaints and determined each to be appropriate. (ECF No. 60-3 at 3).

Plaintiff brought this action alleging that as a result of these incidents Defendants abridged his rights under the free exercise clause of the First Amendment and the due process and equal protection clauses of the Fourteenth Amendment. (ECF No. 9 at 5)[1]. Defendants filed a motion for summary judgment. (ECF No. 60) and submitted supporting affidavits from the Defendants as well as copies of Plaintiff's grievances and the responses to those grievances. (ECF Nos. 60-3–60-7).

---

[1] Plaintiff asserted his conditions of confinement claim in part under the Eighth Amendment. (ECF No. 9 at 5). As Plaintiff's claims concern events alleged to have occurred when Plaintiff was a pretrial detainee, the magistrate judge reviewed these claims under the Due Process clause. (ECF No. 69 at 32). Plaintiff does not object to that portion of the Report.

Plaintiff submitted a response in opposition to summary judgment supported by numerous affidavits from other inmates at SLRDC. (ECF Nos. 64; 64-1). Defendants then filed a reply to Plaintiff's response, (ECF No. 66), and Plaintiff filed a sur-reply (ECF No. 67).[2]

## II. Report and Recommendation

The Report divides Plaintiff's First Amendment claims into two parts: (1) that Defendants' policy prohibiting Plaintiff from wearing religious headwear, including a kufi, abridged his rights under the free exercise clause and (2) that Defendants' policies regarding group worship services and prayer violated both the free exercise and the establishment clauses of the First Amendment. The magistrate judge recommended that the court deny summary judgment on Plaintiff's claim regarding religious headwear as to Defendants Dennis, Maghaney, Lumpkin and Shirah. (ECF No. 69 at 25). The magistrate judge likewise recommended denying Defendants Dennis, Maghaney, Lumpkin and Shirah qualified immunity as to this claim. *Id.* at 41. The magistrate judge recommended granting summary judgment on this claim

---

[2] Neither the Federal Rules of Civil Procedure nor the Local Rules provide for the ability to file a sur-reply as a matter of right. The magistrate judge, however, considered Plaintiff's sur-reply. (ECF No. 69 at 21). After Plaintiff filed his sur-reply in this case, the undersigned issued a standing order directing that a party "may not file, nor will the court consider, any sur-reply to a motion absent a showing of good cause and leave of the court." *In re: Sur-Replies*, Standing Order (D.S.C. Nov. 5, 2020). Because Plaintiff's sur-reply pre-dated this court's standing order, the court will consider it out of an abundance of caution in light of Plaintiff's *pro se* status.

as to Defendants Marquez and Nathaniel. *Id*. at 25.  With respect to Plaintiff's First Amendment claims challenging the enforcement of the policies regarding group worship services and prayer at SLRDC, the magistrate judge recommended that the court grant summary judgment in favor of all Defendants based on Plaintiff's failure to establish a constitutional violation. *Id*. at 30–31. The magistrate judge declined to address qualified immunity in connection with this claim. *Id.* at 41.

Likewise, as to Plaintiff's due process and equal protection claims, the magistrate judge recommended that the court grant summary judgment in favor of all Defendants based on Plaintiff's failure to establish a constitutional violation, *id*. at 31–40, and declined to address qualified immunity as to those claims, *id*. at 41.

Both Plaintiff and Defendants filed objections to the Report. (ECF Nos. 71; 73; 74). The court concludes a hearing is unnecessary as the briefs and materials submitted by the parties are sufficient for the court to render a decision on the matters before it. *See* L.R. 7.08 (D.S.C.).

### III. Standard of Review

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)).   The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made,

and the court may accept, reject, modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). "An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Id.* at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). On the other hand, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Howard v. Saul*, 408 F. Supp. 3d 721, 726 (D.S.C. 2019) (noting "[c]ourts will not find specific objections where parties 'merely restate word for word or rehash the same arguments presented in their [earlier] filings'"); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the Magistrate Judge"). Furthermore, in the absence of specific objections to the

Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

## IV. Discussion

### A. First Amendment Claim as to Religious Headwear Policy

### 1. Report

With respect to Plaintiff's claim regarding the confiscation of his kufi, the magistrate judge found that Defendants "have not challenged Plaintiff's claim that his inability to wear his kufi places a substantial burden on his religious practice." (ECF No. 69 at 22). The magistrate judge then applied the four-factor test established by *Turner v. Safley*, 482 U.S. 78 (1987), to determine whether Defendants' policy "is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. (ECF No. 69 at 24–25). Viewing the record in the light most favorable to Plaintiff, the magistrate judge concluded that "Defendants have not carried their burden to show that the detention center's current policy [prohibiting religious headwear] is the least restrictive means under *Turner*." *Id*. at 25. Accordingly, the magistrate judge found that, as to Defendants Dennis, Maghaney, Lumpkin and Shirah, "there exists a genuine question of fact as to whether the head covering (kufi) ban and

confiscation *furthers a compelling security interest by the least restrictive means*."
*Id*. at 41 (emphasis added).[3]

Additionally, the magistrate judge determined that, at this juncture, qualified immunity does not shield Defendants Dennis, Maghaney, Lumpkin and Shirah against Plaintiff's claim that the ban on his head covering violated the First Amendment. *Id*. at 41. According to the Report, "[it cannot be said] as a matter of law that it was objectively reasonable for any defendant to believe that the facts as they stand on summary judgment showed no violation of [the] clearly established right" of an inmate to be free from regulations that "substantially burden [the] right to religious exercise without some justification." *Id*. at 41.

**2. Defendants' Objections**

**(a) Constitutional Violation**

Defendants object to the magistrate judge's conclusion that Plaintiff's First Amendment claim as to the wearing of his kufi should survive summary judgment, arguing that there was no evidence establishing this policy substantially burdened Plaintiff's religious practice and, therefore, the magistrate judge should never have

---

[3] The magistrate judge found no allegations that Defendants Marquez and Nathaniel were personally involved in the enforcement of the head covering policy against Plaintiff and, therefore, recommended that summary judgment be granted on this claim as to those Defendants. (ECF No. 69 at 25). Plaintiff did not object to this conclusion and the court finds no clear error in this part of the magistrate judge's analysis.

even reached the question of whether Defendants' policy is reasonably related to legitimate penological interests under *Turner*. (ECF No. 74 at 3). Defendants further object on the basis that, even if Plaintiff had established a substantial burden, the magistrate judge applied the *Turner* factors in an erroneous fashion. *Id*. at 5–8 .

Defendants are correct that a threshold question here is whether the policy impinges on Plaintiff's First Amendment rights in the first place. *See Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 213 (4th Cir. 2017) ("[C]onsideration of the *Turner* reasonableness factors is required only if the prison policy impinges on [a plaintiff's] First Amendment rights."). Accordingly, before a court applies the *Turner* factors to a claim that a prison policy violates the Free Exercise Clause, "a[n] inmate, as a threshold matter, must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion." *Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). "[A] substantial burden on a person's religious exercise" occurs when a policy puts "substantial pressure on an adherent to modify his behavior and to violate his beliefs," *id*., "or abandon one of the precepts of his religion," *Haendel v. Va. Dep't of Corr*., No. 7:18-cv-00289, 2020 WL 7018564, at *5 (W.D. Va. Nov. 30, 2020) (alteration and internal quotation marks omitted). "[I]f the government action merely makes the religious exercise more expensive or difficult or inconvenient," Plaintiff has not met his burden. *Id.* (internal quotation marks omitted).

The court is constrained to agree that Plaintiff has not offered any facts or evidence that would establish SLRDC's policy preventing him from wearing his kufi substantially burdens his practice of Islam by pressuring him to abandon a precept of his religion or modify his behavior in violation of his beliefs. Plaintiff does not explain the significance of his kufi with regard to his religious disciplines or explain how his ability to practice his religious beliefs is affected without it. This threshold showing might not be an especially difficult one for Plaintiff to make; however, the court cannot simply speculate on behalf of Plaintiff based on a blank record. Accordingly, the court concludes that Plaintiff failed to make a threshold showing that SLRDC's policy regarding religious headwear "places a substantial burden on his ability to practice his religion." *Wilcox*, 877 F.3d at 168.

The court next considers Defendants objection that, even if Plaintiff is determined to have met the threshold showing, the magistrate judge did not properly consider the *Turner* factors. (ECF No. 74 at 5–8). Because "it is no easy feat to run a prison, and [courts] lack[] expertise in navigating the complicated decisions involved in doing so, . . . [p]rison officials are owed deference, and prisoners' constitutional claims receive a lower level of scrutiny than they might outside of prison walls." *Heyer v. United States Bureau of Prisons*, 984 F.3d 347, 355–56 (4th Cir. 2021). Therefore, "[e]ven when a prison policy substantially burdens a prisoner's religious practice, the policy will not violate the First Amendment if the

government can demonstrate that the policy is reasonably related to the achievement of a legitimate penological objective." *Wilcox*, 877 F.3d at 169 (citing *Turner*, 482 U.S. at 89).

*Turner* identified four reasonableness factors to guide courts in determining whether a prison policy that substantially burdens the exercise of religion is nevertheless lawful under the First Amendment: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there are any "ready . . . obvious, easy alternatives." *Turner*, 482 U.S. at 89–90.

Significantly, "this is not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Id*. at 90. In concluding that Plaintiff's claim should survive summary judgment, however, the magistrate judge found that "Defendants have not carried their burden to show that the detention center's current policy [prohibiting religious headwear including kufis] is the *least restrictive* means under *Turner*." *Id*. at 25 (emphasis added). The standard imposed by the magistrate judge applies to claims under the Religious Land Use and

Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*., which requires prison officials to justify an infringing policy as "the least restrictive means of furthering a compelling governmental interest." *Burke v. Clarke*, No. 19-6523, 2021 WL 129937, at *6 (4th Cir. Jan. 14, 2021). RLUIPA "imposes a higher burden than does the First Amendment," requiring officials "to put forth a stronger justification for regulations that impinge on the religious practices of prison inmates." *Scott v. Pierce*, 689 Fed. App'x 341, 342 (5th Cir. 2017). Plaintiff asserts his claims under the First Amendment, not RLUIPA.[4] *Turner* applies and "does not

---

[4] The amended complaint does not refer to the RLUIPA. (ECF No. 9). Only in his response to Defendants' motion for summary judgment does Plaintiff make a passing reference to this statute. (ECF No. 64 at 8–9). This court is required to liberally construe complaints filed by *pro se* litigants. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Such *pro se* complaints are held to a less stringent standard than those drafted by attorneys, *id*.; *Hughes v. Rowe*, 449 U.S. 5, 9 (1980), and a federal district court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). The mandated liberal construction afforded to *pro se* pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so; however, a district court may not rewrite a complaint to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). Plaintiff's fleeting mention of the RLUIPA in response to summary judgment is wholly insufficient to state a claim under RLUIPA.

Furthermore, although Plaintiff is self-represented, he is no stranger to litigation in the federal courts. In 2014, Plaintiff filed a lawsuit naming eighteen (18) defendants, including the SLRDC, and asserting claims—as he has in the instant case—related to the alleged denial of religious liberties and failure to provide a sufficient kosher

require the [Defendants] to use the 'least restrictive means' to promote prison security" in the context of a First Amendment claim. *Prison Legal News v. Sec'y, Fla. Dep't of Corr.*, 890 F.3d 954, 975 (11th Cir. 2018); *see Turner*, 482 U.S. at 90–91. Accordingly, application of a "least-restrictive" standard was error.[5] The court is obliged to give *de novo* consideration to Plaintiff's claim in light of the *Turner* factors.

First, with regard to whether there is a "valid rational connection between the prison regulation and the government interest justifying it," *Turner*, 482 U.S. at 982–83, Defendants need not come forward with "*actual proof* that a legitimate interest

---

diet. *Brown v. Major et al.*, 4:14-cv-4191-TMC. After more than a year of litigation, which included the adjudication of numerous motions filed by Plaintiff, the case was dismissed for failure to prosecute. *Id.* at ECF No. 80. In September 2014, Plaintiff filed an action naming eight defendants affiliated with the Sumter, South Carolina Police Department and other Sumter County officials, judges and prosecutors alleging violations of his "civil and constitutional rights." *Brown v. Gardner et al.*, 3:14-cv-4635-TMC. This case was dismissed on March 3, 2015 on the recommendation of the magistrate judge without objection. *Id.* at ECF No. 11). In June 2015, Plaintiff filed an action against eight defendants, including the State of South Carolina and the North Charleston Police Department, in the Court of Common Pleas for the Ninth Judicial Circuit which was removed to this court. *Brown v. State of South Carolina et al.*, 2:15-cv-2532-TMC. This lawsuit asserted numerous constitutional claims and was dismissed on recommendation of the magistrate judge for failure to prosecute. *Id.* at ECF No. 27). In January 2020, Plaintiff filed an action against nine defendants, including employees of SLRDC, the Sumter County Sheriff and several Deputy Sheriffs employed by Sumter County, as well as a Sumter County Judge. *Brown v. Dennis et al.*, 3:20-cv-128-TMC-TER. This action remains pending.

[5] In fairness to the magistrate judge, the court notes that Defendants cited the higher burden imposed by RLUIPA in their objections. (ECF No. 74 at 5).

will be furthered by the challenged policy" as "[t]he connection between the two need only be *objectively rational*." *Simpson v. Cty. of Cape Girardeau, Mo*., 879 F.3d 273, 279 (8th Cir. 2018) (emphasis added). "Prison officials need only show that the regulated practice creates a *potential* threat to institutional security." *Wallace v. Ste. Genevieve Det. Ctr.*, No. 4:17-cv-490-PLC, 2019 WL 1597457, at *11 (E.D. Mo. Apr. 15, 2019) (alteration and internal quotation marks omitted). Here, the stated purpose for the policy regarding religious clothing is to promote institutional security as such items "can cause a disruption in the pod where the inmate is housed or can make that inmate a target by other inmates," (ECF No. 60-3 at 3), and "can be used to conceal contraband," (ECF No. 60-5 at 2). Plaintiff responds that a kufi is not a security threat as reflected by the fact that "other bigger Detention Centers . . . allow their inmates to wear religious headwear and do not feel it's a security threat." (ECF No. 67 at 3–4). Just because a different correctional facility with different resources and staffing may not follow such a policy does not mean Defendants' policy is not objectively and rationally related to reducing the risk of disruptions, violence and contraband in the SLRDC. The court concludes that Defendants have established that the policy is aimed at curbing a potential threat to the safety and security of the facility; there is an objectively rational connection between the religious headwear policy and the security of the SLRDC. This factor militates in favor of the reasonableness of the policy.

The next consideration under *Turner* is whether, presently at SLRDC, "there are alternative means of exercising the right that remain open to prison inmates." *Turner*, 482 U.S. at 90. Defendants, however, do not identify any presently existing alternatives to a prohibition on kufi's (and other religious headwear) other than allowing Plaintiff to wear a kufi in solitary confinement. Viewing the evidence in a light most favorable to Plaintiff, therefore, the court must conclude there are no such alternative avenues afforded to prisoners at SLRDC and that such absence could suggest to a trier of fact that the policy is unreasonable. *See Beard v. Banks*, 548 U.S. 521, 532 (2006) ("The absence of any alternative . . . provides some evidence that the regulations are unreasonable but is not conclusive of the reasonableness of the Policy.") (alterations and internal question marks omitted).

A third factor for the court to consider is whether there are any "ready . . . obvious, easy alternatives" to the prohibition against religious head coverings imposed by their policy. *Turner*, 482 U.S. at 90. *Turner* explained that "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." *Id*. In the instant case, Plaintiff has not identified any proposed alternative to the policy other than he simply be permitted to wear it—presumably at all times—because other facilities permit him to do so. But, as *Turner* explained, prison officials are not

required "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." *Turner*, 482 U.S. at 90. Defendants indicate that, to the extent that Plaintiff seeks to wear a kufi at all times, "it would be impossible to protect him from . . . being a target of other inmates" unless he was placed in solitary confinement. (ECF No. 60-1 at 10).

Finally, *Turner* also asks the court to consider what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Defendants did not specifically address the practical effect that permitting inmates to wear religious head coverings at all times would have on guards and the allocation of resources at SLRDC. However, they offered evidence establishing that there is only one officer assigned to each pod, (ECF No. 60-4 at 3), and that permitting inmates to wear kufis or other religious head coverings affords inmates a better chance of carrying contraband and creates a flashpoint for disputes amongst the inmates. Allowing inmates to wear religious head coverings at all times, therefore, would have the obvious ripple effect of increasing the risk of danger faced by an already limited staff.[6]

---

[6] In their objections to the Report, Defendants argue, for the first time, that permitting inmates to wear kufis is not feasible given the design and layout of the SLRDC which has "mostly open pods, and only has cells with locked doors in the lockup unit." (ECF No. 74 at 4). Defendants, however, cannot rely on new facts or arguments raised in their objections.

Having considered the relevant factors, the court concludes that, even if Plaintiff had established that SLRDC's policy prohibiting him from wearing a kufi all the time substantially burdens his ability to practice his religion, this policy, as a matter of law, is reasonably related to the achievement of a legitimate penological objective. *See Turner*, 482 U.S. at 89.    Accordingly, the court concludes that Defendants are entitled to summary judgment on the basis that Plaintiff failed to establish a First Amendment claim with regard to the wearing of his kufi.

**(b) Qualified Immunity**

The magistrate judge denied qualified immunity on the basis that it was not objectively reasonable for any defendant to believe that the facts reflected "no violation of [the] clearly established right" of an inmate to be free from regulations that "substantially burden [the] right to religious exercise without some justification." (ECF No. 69 at 41).  Defendants object to this conclusion,  arguing that there was no precedent that would have put them on notice that they were in violation of the First Amendment by confiscating Plaintiff's kufi pursuant to a policy prohibiting all religious clothing to promote security and order within the facility. (ECF No. 74 at 7–8).

Qualified immunity protects government officials from civil liability and suit for "conduct [that] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982). In considering an official's claim of qualified immunity, the court must determine whether "(1) the official violated a statutory or constitutional right, and (2) . . . the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (internal quotation marks omitted). Therefore, even assuming that a reasonable trier of fact could conclude that Defendants violated Plaintiff's First Amendment rights, Defendants nonetheless are entitled to summary judgment based on qualified immunity if Plaintiff's constitutional rights were not "clearly established at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (internal quotation marks omitted).

The "clearly established" inquiry asks whether the conduct in question "violate[s] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. A "right is clearly established only if its contours are 'sufficiently clear that "a reasonable official would understand that what he is doing violates that right."'" *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In making this assessment, district courts must be mindful of the Supreme Court's repeated admonishment "not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (internal quotation marks omitted).

In order to decide whether a right was clearly established at the time of the constitutional violation, the court looks to "cases of controlling authority in [this] jurisdiction." *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001) (internal quotation marks omitted). Controlling authority consists of "the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose." *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 279 (4th Cir. 2004). If "there are no such decisions from courts of controlling authority, [the district court] may look to 'a consensus of cases of persuasive authority' from other jurisdictions, if such exists." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538–39 (4th Cir. 2017) (quoting *Owens*, 372 F.3d at 280).

First, the Report identifies the right in question as the generalized right "to religious exercise" free from unjustified and substantial interference. *Id*. at 41. The court concludes, however, that the Report fails to define the right in question at a sufficiently "high level of particularity." *Fijalkowski v. Wheeler*, 801 Fed. App'x 906, 910 (4th Cir.) (internal quotation marks omitted), *cert. denied*, 141 S. Ct. 261 (2020). Stated at the appropriate level of particularity, the right allegedly violated by Defendants is a detainee's right to possess and wear a kufi while he is incarcerated. Plaintiff, furthermore, seeks to vindicate his right to possess and wear a kufi at all times during his detention as he was purportedly allowed to do at other correctional facilities.

The clearly established standard "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. Plaintiff has not pointed to any controlling precedent establishing beyond debate that, in September 2019, Defendants could not have reasonably believed that enforcing a detention center policy banning all religious head coverings to minimize contraband and disruptions and to promote safety was unconstitutional, and the court can find none. On the contrary, the general consensus among courts makes clear that "[p]risoners do not have an unbridled First Amendment right to wear a kufi at all times." *Lewis v. Snohomish Cty. Sheriffs*, No. C19-870-RAJ-BAT, 2019 WL 6732888, at *3 (W.D. Wash. Aug. 30, 2019), *report & recommendation adopted*, No. C19-870-RAJ, 2019 WL 6728843 (W.D. Wash. Dec. 10, 2019); *see also, e.g.*, *Jefferson v. Raimondo*, No. CV 17-439 WES, 2018 WL 3873233, at *15 (D.R.I. Aug. 15, 2018) (having "little difficulty in concluding that the law is *not* clearly established that plaintiff has a constitutional right to wear a kufi at all times"); *Goins v. Fleming*, No. 7:16-cv-00154, 2017 WL 4019446, at *6 (W.D. Va. Sept. 12, 2017) (under "clearly established law, the defendants could reasonably have believed that enforcing the general rule of banning headwear during pod recreation was constitutional, even if it had the incidental effect of burdening Goins's religious tenet to wear his kufi at all times"); *Pittman v. Jesson*, No. 12-cv-1410 SRN/TNL, 2014 WL 4954286, at *24 (D. Minn. Sept. 30, 2014) (concluding

"it is not clearly established that [prisoner] has a right to wear his Kufi at all times"); *Rattler v. Sublett*, 145 F.3d 1340 (9th Cir. 1998) (same); *Salih v. Smith*, No. 93-1556, 1994 WL 750529, at *6 (D. Md. Nov. 8, 1994), *aff'd*, 73 F.3d 358 (4th Cir. 1995) (noting that under clearly established law at the time it was "impossible" to conclude that a reasonable official would have understood that prohibiting an inmate from wearing a kufi outside of his housing area was unlawful).

Accordingly, the court concludes that Defendants' conduct as alleged by Plaintiff, even if true, would not have violated clearly established law putting them on notice that such conduct is unconstitutional. The court, therefore, concludes that Defendants are entitled to summary judgment as to this claim on the additional basis of qualified immunity.

### (c) Sheriff Dennis

In their motion for summary judgment, Defendants argued that, regardless of the validity of his constitutional claims, Plaintiff failed to show Sheriff Dennis was personally involved in any way in the alleged violations or that he had any knowledge upon which to base supervisory liability. (ECF No. 60-1 at 7). The magistrate judge rejected this argument on the basis that "Plaintiff alleges that he grieved to the Sheriff with regard to his claims," and that "Sheriff Dennis is in charge of the detention center and makes policy." (ECF No. 69 at 31).

Defendants object to this ruling, noting that the only evidence before the court shows that Sheriff Dennis "has no involvement in the daily operations of the Detention Center and was not involved in dealing with the Plaintiff," and that "inmates do not get to choose who handles a grievance, as it is handled by a supervisor or administrative staff, and not the Sheriff." (ECF No. 74 at 2–3). Defendants contend this provides no basis for Sheriff Dennis to be held individually liable, either for his direct, personal involvement or in a supervisory capacity. *Id*.

To establish personal liability under § 1983, Plaintiff is obligated to establish "that the official charged acted personally in the deprivation of the plaintiff's rights[,]" meaning that "the official's own individual actions must have violated the Constitution." *Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted). Plaintiff has presented nothing other than conclusory allegations to establish Sheriff Dennis was personally involved in the alleged deprivation of his rights. As for supervisory liability under § 1983, a plaintiff must establish (1) that the supervisory official had actual or constructive knowledge that his or her subordinates were engaging in conduct that created a pervasive or unreasonable risk of constitutional injury; (2) that the supervisory official's response to such knowledge was "so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) a causal link between the supervisor's inaction and the alleged constitutional injury. *Pratt-Miller v. Arthur*,

701 Fed. App'x 191, 193 (4th Cir. 2017).  Plaintiff's vague statement that he sent an unspecified grievance to Sheriff Dennis is insufficient, standing alone, to establish a supervisory liability claim against Sheriff Dennis in his individual capacity. Accordingly, the court concludes this objection is well taken and that Defendant Sheriff Dennis is entitled to summary judgment as to this claim on the additional basis that Plaintiff has failed to come forward with facts establishing his personal involvement in the asserted violations.

## B. First Amendment Claim as to Religious Activities Allowed in Common Room

### 1. Establishment Clause

To the extent Plaintiff claims the policy requiring him to retreat to his cubicle during Christian services in the pod's common area offends the establishment clause of the First Amendment because he is able to hear a service in which he did not wish to participate, the magistrate judge noted that the same challenge to SLRDC's policy has been rejected by a court in this district. (ECF No. 69 at 30 (citing *Piucci v. Dennis*, No. 8:20-cv-1157-SAL-JDA, 2020 WL 3130257, at *5 (D.S.C. May 19, 2020), *report &recommendation adopted*, No. 8:20-cv-01157-SAL, 2020 WL 3130250 (D.S.C. June 12, 2020) (rejecting establishment clause challenge to SLRDC's policy because "there is no indication that he was forced, encouraged, or required to attend the religious services at issue" and the policy did "not require other inmates to alter their leisure activities or work routines any more than they would to

accommodate other inmates' nonreligious activities in a limited space")))). Additionally, the Report cites precedent from the Western District of Virginia— subsequently affirmed by the Fourth Circuit Court of Appeals—rejecting a similar argument raised by a Christian inmate complaining that he was subjected to Islamic doctrine during Muslim prayers in the common areas. *Id*. (citing *Priddy v. Garman*, No. 7:12-cv-17, 2012 WL 7151299, at *2 (W.D. Va. Mar. 14, 2012) (noting that because "the opportunity [offered] to Muslim inmates to conduct informal group prayers in the common areas is equally open to any inmate of any other religious persuasion, . . . this accommodation of Muslim inmates' beliefs does not constitute an improper endorsement of the Muslim faith over other religions"), *aff'd*, 474 Fed. App'x 968 (4th Cir. 2012)). Accordingly, the magistrate judge recommended that Defendants be granted summary judgment on Plaintiff's Establishment Clause claim. *Id.*at 29–30.

Plaintiff objected to this portion of the Report on the basis that the magistrate judge's analysis ignored facts presented in three affidavits offered by Plaintiff in opposition to summary judgment. (ECF No. 73). Plaintiff submitted affidavits from inmates detained at SLRDC during the relevant time frame which attested that on December 1, 2019, "the entire E-pod refused religious services for the day." (ECF No. 64-1 at 15–16, 22–23, 27). Officer Austin relayed this information to Lieutenant James, the shift supervisor, who indicated that the prisoners "could not deny

religious visitors [or] service[s] and that it was church time and whoever didn't want to participate needed to fall back to their own cubicles whether it was the entire pod or not." *Id.*

As an initial matter, the court notes that Plaintiff did not include the purported December 1, 2019 incident in his amended complaint. It is well-established that a plaintiff cannot amend the complaint by asserting new claims in response to a motion for summary judgment. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Nonetheless, even if the court considered these facts as set forth in Plaintiff's supporting affidavits, there would be no basis for the court to deviate from the recommendation of the magistrate judge. Plaintiff has proffered no basis from which a trier of fact could conclude that this single incident reflects an SLRDC policy that Christian services will be conducted in E-pod's common area even when every inmate in the "entire E-pod" has indicated a desire not to participate. Indeed, in Plaintiff's internal SLRDC grievances regarding the policy on religious services, he complains that "those not participating in the service" have a difficult time tuning it out due to the proximity of the pod area and the cubicles. (ECF No. 60-4 at 17–18). Moreover, none of the Defendants—only Officer Austin and Lieutenant James—are alleged to have been involved in this incident. As noted, personal liability under § 1983 requires Plaintiff to establish "that the official charged acted personally in the

deprivation of the plaintiff's rights[,]" meaning that "the official's own individual actions must have violated the Constitution." *Williamson*, 912 F.3d at 171 (internal quotation marks omitted). Accordingly, the court overrules this objection.

### 2. Free Exercise Clause

With respect to Plaintiff's claim that his First Amendment rights have been impinged by the policy prohibiting inmate-led religious services, group prayer, or group religious activities in the absence of an approved outside volunteer leader, the magistrate judge concluded that Defendants established the policy is rationally related to legitimate penological interests pursuant to *Turner* and that volunteer-led services and group prayer is an option available to inmates of every religion including Muslims. (ECF No. 69 at 27–28). Accordingly, the magistrate judge concluded that Plaintiff failed to proffer sufficient evidence to create a genuine issue of fact that the policies cited and complained of violate his First Amendment rights. *Id*. at 28.

To the extent that Plaintiff claims the prayer policy prevents him from *individually* praying outside of his cubicle in the common areas and, thereby, violates his First Amendment rights, the magistrate judge cited *Mahaffey v. Major,* No. 3:07–cv-793-SB, 2008 WL 508463, at *1 (D.S.C. Feb. 21, 2008), which rejected a similar challenge to the prayer policy at SLRDC prohibiting inmates from praying individually outside of their cubicles and in the common rooms on the basis that the

policy "has a valid, rational connection to a legitimate government interest" of "maintain[ing] order within the institution," *id*. at \*2. (ECF No. 69 at 29). *Mahaffey* explained "detainee prayer at the SLRDC is confined to detainee cells" because "when detainees convene or congregate in the hallways, lobbies, or other common areas, it inhibits the flow of traffic throughout those areas and poses a danger to the safety and security of the institution." *Mahaffey,* 2008 WL 508463, at \*2. The magistrate judge concluded that Plaintiff's claim in the instant case is without merit for the same reasons expressed in *Mahaffey*. (ECF No. 69 at 29).[7]

Plaintiff filed objections to the magistrate judge's analysis of his challenges to SLRDC's policy regarding prayer and head coverings (ECF No. 73 at 1–4); however, these objections relate to his assertion that Defendants' selective enforcement of these policies abridged his rights under the Equal Protection clause and are, therefore, addressed below. To the extent Plaintiff intended to apply these objections to the magistrate judge's analysis under the Free Exercise clause of the

---

[7] The magistrate judge noted that Plaintiff himself unsuccessfully raised this same claim in a previous lawsuit challenging SLRDC's policy restricting prayer outside his cubicle. (ECF No. 69 at 29); *see Brown v. Major*, No. 4:14-cv-4191-TMC-TER, 2015 WL 7292868, at \*4 (D.S.C. Oct. 30, 2015), *report & recommendation adopted,* No. 4:14-4191-TMC, 2015 WL 7302230 (D.S.C. Nov. 18, 2015). That lawsuit was dismissed for failure to prosecute and not on the merits. *See Brown*, 2015 WL 7302230, at \*1 (dismissing action under Federal Rule of Civil Procedure 41(b)). Accordingly, that prior disposition has no preclusive effect.

First Amendment, such objections do not address the basis for the magistrate judge's determination that the prayer policy claim was without merit under *Turner*. The court finds no clear error in the magistrate judge's analysis.

### C. Conditions of Confinement Claim

The magistrate judge evaluated Plaintiff's claim that the lack of variety in his kosher diet provided by SLRDC pursuant to the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment, in light of Plaintiff's status as a pretrial detainee. (ECF No. 69 at 32). The magistrate judge concluded that Plaintiff failed to present evidence sufficient to create a genuine issue of material fact regarding whether "he was deprived of a 'basic need' and that these deprivations were attended by deliberate indifference on the part of the Defendants." (ECF No. 69 at 34). The magistrate judge noted further that Plaintiff failed to offer evidence of "any physical injuries from not having variety in his meals" or that "the meals were nutritionally inadequate." *Id*. at 35. Plaintiff did not object to this portion of the Report, and the court finds no clear error in the magistrate judge's analysis.

### D. Equal Protection

The magistrate judge gleaned two discrete Equal Protection claims from Plaintiff's amended complaint. (ECF No. 69 at 35–40). First, as to Plaintiff's Equal Protection claim that he and other Muslim inmates were not permitted to pray outside of their cubicles while Christian inmates were permitted to do so, the

magistrate judge found that the policy applied to all inmates equally, regardless of religion. (ECF No. 69 at 38).  The magistrate judge concluded that the evidence on the record did not create a genuine question of fact regarding whether Plaintiff was treated differently from other similarly situated inmates or whether, assuming Plaintiff was treated differently, such treatment was intentional. *Id.* at 37–38. Second, the magistrate judge addressed Plaintiff's apparent assertion that Christian detainees were permitted to wear or keep articles of religious significance such as medallions, but he was denied the right to wear his kufi.  *Id.* at 38. The magistrate judge rejected this claim, explaining that "the Equal Protection clause requires an intentional violation by a defendant" and that Defendant "Shirah has attested that he is not aware of inmates receiving jewelry . . . and that it is against policy."  *Id.*. Accordingly, the magistrate judge determined that Plaintiff's allegations were "insufficient to create an issue of fact against Shirah and silent as to any other named Defendant['s connection to the Equal Protection claim]." *Id.*

Plaintiff objects to this portion of the Report, arguing that part of his Equal Protection claim was that SLRDC's policy prohibiting prayer outside of the cubicle unless led by an outside volunteer was discriminatorily enforced in that Muslims were required to abide by the policy while Christians were permitted to pray in groups without the presence of an outside volunteer. (ECF No. 73 at 1–3).  In

support, Plaintiff points to the internal grievance he filed on September 28, 2019,

which stated in relevant part:

> LT SWEAT CLEARLY TOLD US MUSLIMS THAT WE
> COULDN'T HAVE A[N] [ISLAMIC] GROUP AMONGST
> OURSELVES AND THAT WE CANT PRAY IN THE DAYROOM
> TOGETHER AND THAT IT WAS POLICY THAT EVERY INMATE
> SHALL PRAY IN THEIR OWN CUBE YET CHRISTIAN INMATES
> ARE PERMITTED TO HAVE BIBLE STUDY AMONGST
> THEMSELVES EVERY DAY AS WELL AS TO HOLD HANDS
> AND PRAY IN THE DAY ROOM . . . REGARDLESS OF ANY SAID
> POLICY.

(ECF No. 60-4 at 17). In response to this grievance, Lt. Shirah reiterated the policy

that inmates are not permitted to engage in group religious activities unless such

activities are being directed by an outside volunteer. *Id*. There is no evidence before

the court, however, from which a trier of fact could determine whether any of the

Defendants were involved in permitting Christian inmates to violate the group prayer

policy while enforcing the policy against Muslim inmates. Plaintiff has failed to

establish that any of the Defendants "acted personally in the deprivation of the

plaintiff's rights." *Williamson*, 912 F.3d at 171 (internal quotation marks omitted).

This objection, therefore, is overruled.

Plaintiff filed a second objection to the magistrate judge's Equal Protection

analysis, arguing that Christian inmates were permitted to keep religious items of

significance to them while he was forced to give up his kufi. (ECF No. 73 at 3). This

objection merely restates the argument made to, and rejected by, the magistrate

judge. As noted in the Report by the magistrate judge (ECF No. 69 at 21–22, 38),

Plaintiff alleged that in December 2019, outside volunteers gave SLRDC inmates

Christmas packages containing a medallion and a penny, each of which bore

Christian imagery (ECF Nos. 64 at 4; 67 at 5). Plaintiff asserts that, unlike his kufi,

these items were never confiscated. *Id*. In his argument to the magistrate judge,

Plaintiff sought to impose liability against Lt. Shirah and Sheriff Dennis for this

different treatment based on their supervisory roles. (ECF No. 67 at 5). Plaintiff

also reasoned that, because Lt. Shirah oversees the volunteers, he "*therefore*

searched and made sure of what we were receiving [in] the Christmas packages." *Id*.

(emphasis added). The magistrate judge rejected this argument, concluding that

"Plaintiff's speculative assertion is insufficient to create an issue of fact against [Lt.

Shirah]" as "the Equal Protection clause requires an intentional violation by a

defendant." (ECF No. 69 at 38). Plaintiff's objection merely reiterates this claim

with the additional allegation that the "packages were distributed to the inmate

population by the Christian religious volunteers [only] after inspection of the

disclosed administrative defendant's approval which included defendant Shirah so

there is no way possible defendant Shirah . . . [did not have] knowledge of these

items." (ECF No. 73 at 3).

    To the extent Plaintiff is suggesting that Lt. Shirah actually inspected the

packages that were distributed at SLRDC and, therefore, knew that Christian jewelry

and other items were being distributed to inmates, these are new factual allegations and the court declines to consider them. *See Cleveland v. Duvall*, No. 8:14-CV-04305-RBH, 2015 WL 6549287, at *2 (D.S.C. Oct. 28, 2015), *aff'd*, 647 Fed. App'x 156 (4th Cir. 2016) ("Plaintiff cannot use his objections to plead new facts not alleged in his complaint."). Plaintiff fails to explain why any conclusion or finding in this portion of the Report is erroneous, and the court can find no clear error in this regard. Therefore, this objection is also overruled.

**E. Grievance Process**

To the extent that Plaintiff alleges SLRDC's grievance process is constitutionally infirm, the magistrate judge determined such claims should be rejected "as there is no constitutional right to participate in grievance proceedings." (ECF No. 69 at 35 (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994))). Plaintiff did not object to this portion of the Report, and the court finds no clear error in the magistrate judge's analysis.

**IV. Conclusion**

Having carefully reviewed the record, the thorough Report, and the parties' objections, the court, for the reasons set forth above, **DECLINES** to adopt the Report's recommendation that the motion for summary judgment be denied for Defendants Dennis, Maghaney, Lumpkin and Shirah. The court, however,

**ADOPTS** the recommendation of the Report that summary judgment be granted in favor of all Defendants on all remaining claims.

Accordingly, Defendants' motion for summary judgment (ECF No. 60) is hereby **GRANTED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
March 3, 2021

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.